UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| AMEREN ILLINOIS COMPANY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNATIONAL BROTHERHOOD | ) |
| OF ELECTRICAL WORKERS, | ) |
| LOCAL UNION NO. 51, | ) |
| | ) |
| Respondent. | ) |

**COMPLAINT TO VACATE ARBITRATION AWARD**

Plaintiff, AIC Company ("AIC" or the "Company"), by its attorneys, for its Complaint to Vacate Arbitration Award, alleges as follows:

**INTRODUCTION**

1. This is an action to vacate or modify an arbitration award issued under the Labor Agreement between AIC and Local 51 of the International Brotherhood of Electrical Workers ("Local 51" or the "Union"), effective July 1, 2012, through June 30, 2017 (Exhibit 1). AIC seeks to vacate or modify this award on the basis that the award exceeded the arbitrator's authority as expressly defined and limited by the Labor Agreement.

**JURISDICTION AND VENUE**

2. This action seeks to vacate or modify an arbitration award premised on an alleged violation of the Labor Agreement between AIC, an employer, and Local 51, a labor organization representing employees in an industry affecting commerce. As such, jurisdiction in this court is appropriate pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C.A. § 185(a). Jurisdiction is also appropriate pursuant to 28 U.S.C.A. §§ 1331, 1337.

{00421572.3}

3.  Local 51's duly authorized officers or agents engage in representing or acting on behalf of its members in Illinois. The Union's principal office is located in Springfield, Illinois. Accordingly, venue is appropriate pursuant to Section 301(a) and Section 301(c) of the LMRA, as amended, 29 U.S.C.A. § 185 (a), (c). Venue is also appropriate pursuant to 28 U.S.C.A. § 1331.

## PARTIES

4.  AIC is an Illinois corporation which provides gas service to over 800,000 customers and electric service to over 1.2 million customers in the State of Illinois. As relevant to this action, AIC employs linemen who are members of Local 51 and who covered by the Labor Agreement between AIC and Local 51. AIC is an employer within the meaning of 29 U.S.C.A. § 152(2), and it engages in commerce and in an industry affecting commerce within the meanings of 29 US.C.A. § 152(2), (6), (7).

5.  Local 51 is a union representing linemen employed by AIC and working at locations covered by the Labor Agreement between AIC and Local 51. Local 51 is a labor organization within the meaning of 29 U.S.C.A. § 152(5).

## FACTS

6.  AIC and Local 51 are parties to a Labor Agreement which was effective July 1, 2012, through June 30, 2017 and extending to August 31, 2017, by the Parties' mutual agreement.

7.  In pertinent part, the arbitration clause of the Labor Agreement provides as follows:

ARTICLE III – ARBITRATION BOARD

\* \* \*

**Section 2.** The arbitrator shall be advised prior to hearing that a decision must be rendered within thirty (30) calendar days of receipt of briefs unless both parties agree to an extension. The arbitrator's decision shall be final and binding on all parties. In considering any dispute under this provision, the arbitrator shall have no authority to amend, delete from or add to this agreement.

8.     Pursuant to its management rights and established binding past practice, AIC promulgated and implemented a Workplace Violence Policy, which provides as follows:

PURPOSE

Ameren strives to provide a safe working environment in which employees, customers, vendors, contractors, and visitors utilizing our facilities and services are not threatened or harmed by any individual's deliberate actions, presence, conduct, or communication. Consistent with Ameren's corporate values of Integrity, Respect, Accountability, Stewardship, Teamwork, and Commitment to Excellence, every Ameren employee is expected to demonstrate behaviors consistent with this policy.

PERSONS AFFECTED

This policy applies to all Ameren employees, applicants, customers, contractors, vendors and any person visiting any Ameren facility. This policy applies to employees while on Company property, on Company worksites, in a Company vehicle, or wherever an employee is performing a function of his/her job, participating in a Company-sponsored event on or off Company property or engaging in activity related in any way to employment with Ameren.

POLICY

Ameren is committed to providing a safe environment for all employees, customers, vendors, contractors, and visitors. It is a fundamental policy of Ameren and its subsidiaries and affiliates to maintain a workplace that is free from actual or threatened violence of any kind. This is a zero tolerance policy. Conduct by or against an employee, customer, vendor, contractor, or visitor that may reasonably be considered threatening, intimidating or aggressive is considered to violate this policy and will not be tolerated. Such behavior may violate this policy regardless of whether it occurs in person, by use of any communications medium, through Company mail, verbally, in writing or in recorded form. Physical confrontations, violent actions or threats, as well as threatening remarks, gestures or insinuations, are strictly prohibited, particularly those likely to provoke or elicit a violent response. Unwanted persistent behavior or contact of a violent or threatening nature is strictly prohibited. Employees who engage in any such conduct will be subject to disciplinary action, up to and including discharge and/or prosecution. Vendors, contractors, or visitors who engage in such behavior on Company property or Company worksites, or while performing work for the Company, will immediately be removed and may be subject to criminal prosecution.

PROHIBITED CONDUCT

Ameren will not tolerate any type of workplace violence or intimidation. Ameren considers the following to represent examples of conduct that violate this policy. This list is not meant to be all-inclusive:

- Causing or attempting to cause physical injury to another person by such actions as punching, striking, shoving, pushing, or other physical contact;
- Stalking or threatening another individual or threatening, talking or joking about engaging in behaviors that harass, intimidate or inflict harm upon another individual;
- Wearing clothing or other items (e.g., pins, hats) with symbols or slogans or viewing, displaying or bringing into the workplace pictures, publications or videos that incite or depict violence, whether directed toward a living or inanimate object;
- Sending threatening or intimidating messages, or messages that incite violence, including but not limited to, messages sent via e-mail, voicemail, Company mail, radios, public address systems, the telephone system, Internet/Intranet medium, and/or conveyed through graffiti or symbols;
- Exhibiting aggressive or hostile behavior that creates a reasonable fear of injury (physical or emotional) to another person; or
- Intentionally damaging Company property or the property of any employees, customer, vendor, contractor, or visitor.

*  *  *

9. The Workplace Violence Policy also provides as follows: "Ameren prohibits the possession of unauthorized weapons by an employee, customer, vendor, contractor, or visitor while on Company property including in vehicles located on Company parking lots . . . ."

10. On June 27, 2016, Crew Leader Brian Knox ("Knox") was terminated for engaging in several acts of serious misconduct, generally described in the letter of termination as follows: "[C]onduct and statements in words or substance . . . which were threatening, intimidating and aggressive towards a supervisor in your work group, a clear affront to the supervisor's authority, and had an unsecured weapon in your car which was on Company property, all of which violates Company policies and is totally unacceptable in our workplace."

11. The misconduct leading to Knox's termination occurred during three separate incidents, two of which occurred on Friday, June 3, 2016, and the third and final of which occurred on Monday, June 6, 2016.

12. The Labor Agreement (Exhibit 1) includes Article II, entitled "Grievance Procedure," which sets forth a mechanism allowing for the filing of grievances, and, absent settlement, resolution through arbitration.

13. On June 28, 2016, Local 51 filed a grievance protesting the June 27, 2016, termination of Knox.

14. AIC and Local 51 were not able to resolve the grievance challenging the June 27, 2016, termination of Knox, and George R. Fleischli was appointed to serve as the Arbitrator.

15. A hearing was conducted before Arbitrator Fleischli on March 24, 2017, and post-hearing briefs were filed with the Arbitrator on June 8, 2017.

16. On or about July 10, 2017, Arbitrator Fleischli issued an Award, a copy of which is attached as Exhibit 2. Within the Award, Arbitrator Fleischli concluded that Knox "did possess a handgun in his truck while it was parked on Company property. Thus, he did violate the letter of the rule." *See* Ex. 2, p. 41.

17. In his award, Arbitrator Fleischli stated that "[t]his case raise[d] a fundamental question about when, if ever, an arbitrator ought to consider whether outside law overrides a provision in a collective bargaining agreement, or in this case, an established rule adopted by an employer and enforced through discipline under the just cause standard in the Agreement." *Id.* at 42.

18. Arbitrator Fleischli interpreted Illinois statutory law, concluding that the Illinois Firearm Concealed Carry Act, 430 Ill. Comp. Stat. 66/65(a), "place[s] limits on the rights of owners of real property (other than private residences) and create[s] rights on behalf of person who possess concealed carry licenses" and does not create any exceptions for employees *Id.* at 45.

19. Arbitrator Fleischli, interpreting Illinois concealed carry law, concluded that the Company could not discipline or discharge Knox for leaving a gun concealed in his vehicle while

that vehicle was parked on the Company's parking lot because doing so violated the Illinois state law —the Illinois Firearm Concealed Carry Act. *Id.* at 46.

20. Arbitrator Fleischli also concluded that Knox's termination was "based in large part on the Employer's conclusion that he threatened [his supervisor, Gabriel] Jones with physical harm and might use a lethal weapon to carry out that threat."

21. Arbitrator Fleischli ruled that it was appropriate "[u]nder these circumstances" including his interpretation of the Illinois state concealed carry law to "overturn [Knox's] termination and reduce the discipline to a level of progressive discipline more commensurate with [his] findings." *Id.* at 46.

22. Arbitrator Fleischli concluded that, under the circumstances, "a suspension of 30 days, combined with a warning that repeated conduct of a similar nature will result in his immediate discharge" *Id.* at 46 was the appropriate punishment for Knox.

## CLAIMS

## COUNT I

### (Vacatur of Arbitration Award)
### (Arbitrator Exceeded His Powers)

23. AIC repeats and reasserts the allegations set forth in Paragraphs 1 through 22, as if fully set forth herein.

24. Arbitrator Fleischli's authority to decide the grievance was subject to the express terms of the Labor Agreement's arbitration clause.

25. By interpreting and applying external law (the Illinois Firearm Concealed Carry Act), rather than the Workplace Violence Policy maintained pursuant to the AIC Labor Agreement's management rights and established binding past practice, Arbitrator Fleischli failed to draw the essence of his Award from the Labor Agreement.

26. The July 10 Arbitration Award of Arbitrator Fleischli (Exhibit 2) must be vacated in its entirety because:

   a. In view of the acts described above in paragraph 25, the Arbitrator manifested infidelity to his duty under federal labor policy to draw the essence of the Award from the Labor Agreement;

   b. In view of the Arbitrator's disregard of the Labor Agreement, AIC's management rights, and established binding past practice, the Award is arbitrary and capricious insofar as the Arbitrator imposed on the parties his own brand of industrial justice; and

   c. In view of the acts described above in paragraph 25, the Arbitrator acted outside his authority.

WHEREFORE, AIC respectfully requests that this Court issue a judgment vacating and setting aside the Award of Arbitrator George R. Fleischli, issue an order denying the grievance in its entirety, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

LOWENBAUM LAW

*/s/ Robert S. Seigel*
Robert S. Seigel, Bar No. 28574
David P. Frenzia, *admission pending*
222 South Central, Suite 900
St. Louis, MO 63105
(314) 746-4842 – Direct
(314 746-4848 – Facsimile
rseigel@lowenbaumlaw.com
dfrenzia@lowenbaumlaw.com

{00421572.3}