E-FILED
Friday, 09 March, 2018  11:42:33 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **AMEREN ILLINOIS COMPANY,** | ) |
| | ) |
| Plaintiff-Counterdefendant, | ) |
| | ) |
| v. | )    No. 3:17-CV-03163 |
| | ) |
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 51,** | ) |
| | ) |
| Defendant-Counterplaintiff. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the parties' cross-motions for summary judgment (d/e 12, 13).  Plaintiff's Motion for Summary Judgment (d/e 12) is GRANTED, and Defendant's Motion for Summary Judgment (d/e 13) is DENIED.  The Arbitrator's award does not draw its essence from the collective bargaining agreement because the Arbitrator applied his interpretation of external state law.  The arbitration award is VACATED, and the case is REMANDED to the Arbitrator for further arbitration proceedings consistent with this Opinion.

# I. INTRODUCTION

Plaintiff Ameren Illinois Company (the Company) is an Illinois corporation that provides gas and electric services to customers in Illinois. The Company employs linemen who are members of Defendant International Brotherhood of Electrical Workers, Local Union 51 (the Union). The Company's linemen are covered by a collective bargaining agreement (the Agreement) between the Company and the Union, which contains an arbitration provision.

In June 2016, the Union filed a grievance protesting the termination of one of the Company's employees. The grievance was not resolved, and the matter proceeded to arbitration. Following an arbitration hearing, the arbitrator overturned the employee's termination and reduced the discipline.

In July 2017, the Company filed a Complaint to Vacate Arbitration Award (d/e 1). The Company alleges that the arbitrator, by interpreting and applying external law, failed to draw the essence of his award from the Agreement. In August 2017, the Union filed an Answer and a Counterclaim for enforcement of the arbitrator's award. The Union also seeks attorney's fees. Both parties have filed motions for summary judgment.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 185. Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185. See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."); 29 U.S.C. § 185(c) (providing that a district court has jurisdiction of a labor union in the district in which the labor organization maintains its principal office or any district in which its authorized officers or agents are engaged in representing or acting for employee members).

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016).

## IV. FACTS

The following facts are taken from the parties' statements of undisputed facts, the parties' Agreement, and the arbitration award. The facts of this case are largely undisputed.

The Company and the Union are parties to an Agreement that was effective July 1, 2012, through June 30, 2017, and extending to August 31, 2017 by the parties' mutual agreement. Section 4 of the Agreement, titled "Loss of Seniority," provides that an employee's seniority terminates under several circumstances, including "[d]ischarge for cause."

The Agreement includes a grievance and arbitration procedure, which provides for the arbitration of differences arising between the Company and the Union during the term of the Agreement. The arbitration clause contains the following provision:

> The arbitrator's decision shall be final and binding on all parties. In considering any dispute under this provision, the arbitrator shall have no authority to amend, delete from, or add to this agreement.

The Company promulgated and implemented a Workplace Violence Policy.[1] The Policy applies to all of the Company's employees, applicants, customers, contractors, vendors, and persons visiting any of the Company's facilities. The Policy prohibits "[c]onduct by or against an employee . . . that may reasonably be considered threatening intimidating or aggressive[.]" The Policy lists representative, non-exclusive examples of conduct that violates the Policy, including, "threatening another individual or threatening, talking[,] or joking about engaging in behaviors that harass, intimidate or inflict harm upon another individual."

---

[1] The Record does not establish when this Policy was originally enacted. The copy included in the Record reflects that the Policy was revised and re-issued on June 1, 2015.

The Policy also bans all unauthorized weapons: "Ameren prohibits the possession of unauthorized weapons by an employee, customer, vendor, contractor, or visitor while on Company property including in vehicles located on Company parking lots . . . ." "Unauthorized weapons" is defined to include guns, and "authorized weapons" is defined as those weapons sanctioned for use by the Company. The Policy also provides that, if the Company finds a violation of the Policy occurred, "appropriate disciplinary action will be taken, up to and including discharge."

On June 27, 2016, the Company terminated the employment of Crew Leader Brian Knox (the Grievant), a member of the collective bargaining unit represented by the Union. According to the Company, the Grievant was terminated for making statements that were threatening, intimidating, and aggressive toward a supervisor and for having an unsecured weapon—a handgun—in his vehicle on the Company's property.

The Union filed a grievance pursuant to the Agreement protesting the Grievant's termination. When the parties were unable to reach an agreement to resolve the dispute, the Union requested arbitration of the grievance.

On March 24, 2016, Arbitrator George R. Fleischli held a hearing. The parties agreed that the issue before the Arbitrator was whether the Company had just cause for the termination of Knox and, if not, what was the appropriate remedy.

In July 2017, the Arbitrator issued an Award finding that just cause for termination did not exist and that the appropriate remedy was a 30-day suspension. The Arbitrator found that the Company did not meet its burden of proving that the Grievant "made statements that were 'threatening, intimidating[,] and aggressive' so as to constitute a violation of the" Workplace Violence Policy. Award at 41 (d/e 13-3). The Arbitrator found that neither statement attributed to the Grievant constituted a threat of physical harm or the possible use of weapon. Id. at 45. The record also established that the Grievant's behavior was unusual and out of character, and the Grievant's record was essentially free of discipline, except for a written reprimand for an accident that occurred approximately 10 years earlier. Id. at 45-46. The Arbitrator also noted that the Grievant recognized that his behavior was inappropriate and vowed not to repeat such conduct in the future. Id. at 46.

As for the handgun in the Grievant's vehicle, the Arbitrator found that the Grievant did possess a handgun in his vehicle while the vehicle was parked on the Company's property and that the Grievant "violate[d] the letter" of the Workplace Violence Policy. Award at 41. The Arbitrator also noted that the fact that the Grievant may not have known the firearm was in his vehicle was a factor that should be taken into account, along with the Grievant's careless disregard for the rule. Id.

The Arbitrator then considered whether an arbitrator can consider outside law that overrides an employer's established rule. Id. at 42. After considering the "longstanding debate among arbitrators" about whether it is appropriate for arbitrators to consider "outside law" when interpreting the terms of a collective bargaining agreement, the Arbitrator determined that an arbitrator could consider such law. Id. at 42-44. The Arbitrator then found that the Illinois Firearm Concealed Carry Act[2] (the Concealed Carry

---

[2] Section 66/65 of the Illinois Firearm Concealed Carry Act prohibits a licensee from knowingly or carrying a firearm on or into several locations. 430 ILCS 66/65(a). Section 66/65(b) provides: "Notwithstanding subsections (a), (a-5), and (a-10) of this Section except under paragraph (22) or (23) of subsection (a), any licensee prohibited from carrying a concealed firearm into the parking area of a prohibited location specified by subsection (a), (a-5), or (a-10) of this Section shall be permitted to carry a concealed firearm on or about his or her

Act) prohibited the Company from enforcing its rule prohibiting the possession of weapons on Company property, including in vehicles located on Company parking lots, because the Grievant held a concealed carry license. Id. at 44. The Arbitrator concluded:

> For the above reasons, the Arbitrator has found that the Grievant did not threaten Jones as alleged and that, under Illinois law, the Employer cannot discipline him for leaving a gun in his car while in its parking lot. Under these circumstances, it is appropriate for the Arbitrator to overturn [the Grievant's] termination and reduce the discipline to a level of progressive discipline more commensurate with these findings.

Id. at 46. The Arbitrator concluded that "a suspension of 30 days, combined with a warning that repeated conduct of the same character will result in his immediate discharge" was the

---

person within a vehicle into the parking area and may store a firearm or ammunition concealed in a case within a locked vehicle or locked container out of plain view within the vehicle in the parking area. A licensee may carry a concealed firearm in the immediate area surrounding his or her vehicle within a prohibited parking lot area only for the limited purposes of storing or retrieving a firearm within the vehicle's trunk. For purposes of this subsection, 'case' includes a glove compartment or console that completely encloses the concealed firearm or ammunition, the trunk of the vehicle, or a firearm carrying box, shipping box, or other container." 430 ILCS 66/65(b). Section 66/65(a-10) provides that an owner of private real property may prohibit the carrying of concealed firearms on property under his control but must post a sign in accordance with subsection (d), unless the property is a private residence. 430 ILCS 66/65(a-10). The parties do not dispute that the Company did not post a sign.

appropriate punishment and ordered reinstatement of the Grievant. Id.

The Company has failed and refused to abide by the Arbitrator's Award and commenced this action. The Union has filed a counterclaim asking that the Court enforce the award and award attorney's fees.

**V. ANALYSIS**

Review of an arbitrator's decision is very limited. See Arch of Ill., Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers of Am., 85 F.3d 1289, 1292 (7th Cir. 1996). A court must enforce an arbitrator's award so long as the award "draws its essence from the contract," even if the court believes the arbitrator's decision is wrong. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987).

An arbitrator's award "draws its essence from the contract" if it is based on the arbitrator's interpretation of the contract, even if that interpretation is unsound. Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC, 768 F.2d 180, 184 (7th Cir. 1985). If, however, the arbitrator "based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not

incorporated in it by reference)," then the award does not draw its essence from the contract. Id. at 184-85 (internal citations omitted) (suggesting that the test would have been better stated as determining "whether the arbitrator had exceeded the powers delegated to him by the parties"). Any reasonable doubt whether the arbitration award is based upon a contractual interpretation is resolved in favor of enforcing the award. Jasper Cabinet Co. v. United Steel Workers of Am., AFL-CIO-CLC, Upholstery & Allied Div., 77 F.3d 1025, 1029 (7th Cir. 1996). When interpreting an agreement, the arbitrator may properly consider the practices of the industry and the law of the shop, which are "equally a part of the collective bargaining agreement although not expressed in it." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960); see also Tootsie Roll Indus., Inc. v. Local Union No. 1 Bakery, Confectionery & Tobacco Workers' Int'l Union, 832 F.2d 81, 84 (7th Cir. 1987) (consideration of the law of the shop is only appropriate to interpret ambiguous contract terms).

In this case, the Company argues that the Arbitrator's award fails to draw its essence from the Agreement because the Arbitrator ignored the Workplace Violence Policy and instead applied his own

interpretation of external law, the Concealed Carry Act. The Union argues that the parties asked the Arbitrator to interpret the contractual phrase "just cause" and to consider the Workplace Violence Policy and the Concealed Carry Act when doing so. Therefore, according to the Union, the award draws its essence from the Agreement.

The Court finds that the Arbitrator's award does not draw its essence from the Agreement. Despite finding that the Grievant's possession of a firearm in his vehicle technically violated the Policy (Award at 41), the Arbitrator determined that the Company could not enforce its Workplace Violence Policy in light of the Concealed Carry Act. Award at 44. The Court recognizes that the Arbitrator did not specifically find good cause to terminate pursuant to the Workplace Violence Policy. See Arch Ill., 85 F.3d at 1293 (noting that a court can refuse to enforce the award if the arbitrator found just cause to discharge but then stated "something to the effect of 'fairness dictates'" that the employee should not have been discharged). Nonetheless, the Arbitrator's award unambiguously reflects that the Arbitrator based his decision on noncontractual grounds. Id. (a court cannot reject an award unless the arbitrator's

decision "unambiguously reflect[s] that the arbitrator based his decision on noncontractual grounds").

In this case, the Arbitrator unambiguously based his decision on his interpretation of an external law, the Concealed Carry Act. Nothing in the parties' Agreement allowed the Arbitrator to consider external law. In fact, the Agreement specifically provided that the Arbitrator could not "amend, delete from[,] or add" to the Agreement. Agreement Art. III, Sec. 2. The Arbitrator's award exceeded his authority because the parties' Agreement did not allow the Arbitrator to consider external law. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 57 (1974) ("The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties."); Roadmaster Corp. v. Prod. & Maint. Emps.' Local 504, Laborers' Int'l Union of N. Am., AFL-CIO, 851 F.2d 886, 889 (7th Cir. 1988) ("When a contract . . . specifically limits an arbitrator's subject matter jurisdiction, the arbitrator should restrict his consideration to the contract, even if such a decision conflicts with federal statutory law.").

The Union argues that both parties recognized that the Workplace Violence Policy "implicated" the Concealed Carry Act and

submitted arguments on the issue. Def. Mot. at 10 (d/e 13). The Union asserts that the Company cannot now argue that the Arbitrator had no authority to decide an issue the parties put before him.

The Court finds that the Company did not waive or forfeit its objection to the Arbitrator considering the Concealed Carry Act. The Arbitrator's award shows that the Company did not agree to have the Arbitrator consider the Concealed Carry Act but, in fact, argued that the Arbitrator should not consider the external law. See Award at 30 (setting forth the Company's argument that the Arbitrator "should limit his consideration to the application of the policy to the Grievant's conduct and not the impact of external law on the vitality of that policy"); Award at 42 (noting the Company's argument that "the Arbitrator's authority is limited to the proper interpretation and application of the collective bargaining agreement" and should limit his consideration to the application of the terms of the Workplace Violence Policy).

The Union also argues that the Arbitrator did not consider the Concealed Carry Act as part of his "just cause" analysis. According to the Union, the Arbitrator's consideration of the Concealed Carry

Act was 'nothing more than an evidentiary ruling that cannot serve as the basis for vacating the Award." Def. Mot. at 11 (d/e 13). The record does not support that conclusion. The Arbitrator did not "exclude" the handgun from consideration due to the Concealed Carry Act. Instead, the Arbitrator found that, under the Concealed Carry Act, the Company could not discipline the Grievant for leaving a handgun in his car while in the Company's parking lot because the Grievant held a concealed carry license. See Award at 44, 46.

Because the Arbitrator based his award on a law that was outside the Agreement, his award does not draw its essence from the Agreement. The Court VACATES the Arbitrator's award and REMANDS this cause to the Arbitrator for further proceedings consistent with this Opinion. See Young Radiator Co. v. Int'l Union UAW, 734 F.2d 321, 326 (7th Cir. 1984) (noting that "courts have the power to remand to the arbitrator where appropriate").

## VI. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment (d/e 12) is GRANTED and Defendant's Motion for Summary Judgment (d/e 13) is DENIED. The Clerk is DIRECTED

to enter judgment in favor of Plaintiff, vacating the arbitration award and remanding the case for further arbitration proceedings consistent with this decision. THIS CASE IS CLOSED.

**ENTERED: March 7, 2018**

**FOR THE COURT:**

    *s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**